UNITED STATES BANKRUPTCY COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ************************************ : | PROCEEDINGS FOR | |
| IN RE: : | REORGANIZATION UNDER | |
|    Golfers' Warehouse, Inc. : | | |
| : | CHAPTER 11 | |
| DEBTOR : | | |
| : | | |
| (Employer's ID #06-1080831) : | CASE NO. | |
| ************************************ | | |

**MOTION FOR ORDER (i) APPROVING AUCTION PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS PURSUANT TO 11 U.S.C. §§ 105 AND 363; (ii) SCHEDULING DATE, TIME AND PLACE FOR SALE HEARING AND RELATED MOTIONS TO ASSUME AND ASSIGN EXECUTORY CONTRACTS PURSUANT TO 11 U.S.C. § 365; (iii) APPROVING BREAK UP FEE; (iv) APPROVING FORM AND MANNER OF NOTICE; AND (v) DISPENSING WITH APPRAISAL REQUIREMENTS**

TO:   THE HONORABLE ALBERT S. DABROWSKI
       CHIEF UNITED STATES BANKRUPTCY JUDGE

     The above-captioned Debtor as debtor in possession ("Debtor") by and through its counsel, Rogin Nassau LLC, hereby moves this Court for an Order (i) approving auction procedures to be employed in connection with the sale of certain of the Debtor's assets; (ii) scheduling the date, time and place for sale hearing and related Motions to Assume and Assign Executory Contracts; (iii)

approving break up fee; (iv) approving form and matter of notice; and, (v) dispensing with appraisal requirements (the "Procedures Motion") and in support thereof, represents as follows:

      l.      On July 9, 2009 (the "Petition Date"), the Debtor filed its petition seeking relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Code") with this Court, and now operates its business and properties as a debtor in possession pursuant to Code §§ 1107 and 1108. An official committee of unsecured creditors (the "Official Committee") has not yet been appointed in these cases.

      2.      The Debtor operates a chain of retail golf stores in Connecticut, Massachusetts, and Rhode Island. In particular, the Debtor's office and warehouse is in Hartford, Connecticut, and it sells merchandise at stores in Cranston, Rhode Island, and in Massachusetts in Braintree, Burlington, Danvers, and Natick.

      3.      The Debtor is a party to certain non-residential real property leases for its store and warehouse locations as set forth on <u>Exhibit A</u> hereto (collectively, the "Leases").

      4.      The annual sales of the Debtor in the year ended December 31, 2008 was approximately $28,384,000.00. As of May 31, 2009, the Debtor's balance sheet stated assets of approximately $15,827,000.00 and liabilities of approximately $ 20,805,000.00.

5.      The Debtor's primary secured creditor is Wachovia Bank, N.A. ("Wachovia"). Wachovia was owed $1,486,728.86 as of the Petition Date. Wachovia's claim is secured by a lien on substantially all of the Debtor's assets.

6.      Prior to the Petition Date, the Debtor determined that the best course of action to maximize recovery to its creditors was to effectuate a sale of its business as a going concern. This decision was made in consultation with Wachovia. Toward that end, the Debtor undertook the marketing of its business by contacting potential purchasers, responding to all inquires from potential purchasers, and permitted potential purchasers to conduct due diligence.

7.      The Debtor operates a seasonal business with approximately 72% of its annual sales occurring during the months of March through August. Due to a combination of (i) the lack of trade credit; (ii) deteriorating sales due to the general downturn in the economy and (iii) a reduction in the advance rates provided for in the Debtor's banking agreement, the Debtor was unable to purchase adequate inventory for its stores. The normal inventory level at this time of year is approximately $6.5 Million. The inventory level is now approximately $4.3 Million and is projected to be approximately $3.5 Million by the end of July. Some of the more popular items are not available for sale to the Debtor's customers. Accordingly, the Debtor will not be able to sustain continued operations past early August. Without a sale of the Debtor's business prior to early August, the Debtor will not be able to sell its business as a going concern.

8.     The Debtor determined that it is in the best interest of its creditors to enter into a certain Asset Purchase Agreement dated July 9, 2009 (together with related documents, agreements and instruments, the "Sale Agreement") for the sale of certain of the Debtor' assets excluding accounts receivable and certain other Excluded Assets as set forth in the Sale Agreement (the "Assets") to GWNE, Inc., a Delaware corporation (hereinafter, the "Buyer").  The consideration for the Assets under the Sale Agreement is made up of: (i) a cash price of 80% of the cost of the Debtor's inventory less $500,000 (in consideration of certain assumed liabilities under the Sale Agreement, including without limitation, the Buyer's assumption of all customer gift cards, coupon programs and deposit liability).  The Debtor places a value on the total cash consideration at $3,100.000 as of the Petition Date.  The Assets include all of the Debtor's inventory, furniture, fixtures, equipment, and a 2001 Isuzu box truck.

9.     Contemporaneously herewith, the Debtor has filed the Sale Motion and a Motion to Assume and Assign Executory Contracts and Unexpired Leases (the "Contracts Motion").  A copy of the Sale Agreement with the Buyer is attached as Exhibit B to the Sale Motion, which is deemed incorporated herein by reference.

10.    Absent a sale to the Buyer, given the Debtor's continued financial difficulties, its lack of funding and the seasonal nature of its business, the value of the Assets will deteriorate since the

Debtor will not be able to continue to operate the Assets as a going concern. In addition, the Sale Agreement provides for a closing on or before August 7, 2009.

11. In accordance with the Sale Agreement, the Debtor request this Court consider the entry of the proposed form of Order attached hereto: (i) providing for the auction procedures described herein; (ii) authorizing the break up fee to Buyer and payment thereof; (iii) approving the form and manner of notice of the sale; and (iv) authorizing the Debtor to proceed with certain sale conditions.

## BREAK UP FEE

12. The Buyer has expended significant time and money conducting its due diligence and has incurred substantial expenses relating to the negotiation of the Sale Agreement. To compensate Buyer for the expenses it has incurred and will in the future incur in connection with the transaction contemplated by the Sale Agreement, and as an incentive for Buyer to continue to pursue its efforts to purchase the Assets, the Debtor has agreed, subject to this Court's approval, that it will pay a Break Up Fee equal to $125,000 upon the earlier of (i) consummation and closing of an competing transaction, out of proceeds at the closing of such competing transaction; (ii) any default related to a competing transaction pursuant to which the Debtor retain any deposit of such competing transaction or, in the event of any dispute regarding whether Debtor may retain such deposit, upon a Final Order

providing that Debtor may retain such deposit, which deposit shall be used to pay the Break-Up Fee immediately.

13. Provisions of this type in sale agreements are approved by bankruptcy courts to buyers as compensation for the time, effort and money expended by buyers, and because the buyer has in fact enhanced the bidding process by acting as a stalking horse for higher or better offers. See In re Integrated Resources, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992); In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990)(approval of $500,000 break-up fee without discussion); In re 995 Fifth Avenue Associates LP, 96 B.R. 24 (Bankr. S.D.N.Y. 1989).

14. Factors some courts have considered in whether to approve a break-up fee include:

    1. Whether the fee requested correlates with a maximization of value to the debtor's estate;

    2. Whether the underlying negotiated agreement is an arms-length transaction between the debtor's estate and the negotiating acquirer;

    3. Whether the principal creditors are supportive of the concession;

    4. Whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;

    5. Whether the dollar amount of the break-up fee is so substantial that it provides a "chilling effect" on other potential bidders;

6. The existence of available safeguards beneficial to the debtor's estate;

7. Whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee.

In re Hupp Industries, Inc., 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992).

15. In Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.), 181 F.3d 527 (3d Cir. 1999), the Third Circuit held that "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." Id. at 535.

16. The Debtor asserts that the Break-Up Fee provided for in the Sale Agreement meet each of the above criteria, are necessary to preserve value for the estate, are well within the range of fees approved in other bankruptcy cases, are fair and reasonable, and will encourage the solicitation of higher and better offers by having brought a buyer ready, willing and able to consummate this transaction.

PROPOSED AUCTION PROCEDURES

17. In order to promote an orderly sale and to maximize the value of the Assets, the Debtor and the Buyer have agreed, subject to Court approval, on the auction procedures (the "Auction Procedures") set forth on Exhibit B hereto.

18.  In the Debtor' judgment, the proposed Auction Procedures are fair, reasonable and appropriate and will likely result in the maximum recovery to their estates.

### PROPOSED AUCTION AND HEARING DATES AND OBJECTION DEADLINES

19.  The Debtor proposes that, if necessary, an Auction be held on August 4, 2009, at the offices of Rogin Nassau LLC, CityPlace I, 22nd Floor, 185 Asylum Street, Hartford, Connecticut at 10:00, a.m. (prevailing Eastern Time).  The offer contained in the Sale Agreement or a higher or better offer obtained at the Auction would then be presented to the Bankruptcy Court at the Sale Hearing scheduled for August 5, 2009 at the United States Bankruptcy Court for the District of Connecticut, 450 Main Street, 7th Floor, Connecticut 06103 at 10:00 a.m. (prevailing Eastern Time). The Debtor reserve the right to ask the court to further shorten the time for the Auction and Sale hearing in open Court.

20.  The Debtor proposes that objections, if any, to the Sale would be considered by the Court at the Sale Hearing and that only objections filed with the Bankruptcy Court and served upon counsel for the Debtor, the Debtor's twenty largest unsecured creditors, Wachovia, and counsel for the Buyer on or before August 4, 2009 at 4:00 p.m. (prevailing Eastern Time) should be considered at the Sale Hearing.

PROPOSED FORM AND MANNER OF NOTICE

21.  Bankruptcy Rule 6004(a) provides that notice of a proposed sale of property other than in the ordinary course of business shall be given to all known creditors and parties in interest. Pursuant to § 102 of the Bankruptcy Code and Bankruptcy Rule 2002, such notice may be limited by Order of the Court.

22.  Bankruptcy Rule 2002(a)(2) provides that not less than twenty (20) days notice by mail shall be given of a proposed sale of property other than in the ordinary course of business unless the Court, for cause shown, shortens the time or directs another method of giving notice, which relief the Debtor has sought under Fed. R. Bankr. P. 9006(c). Bankruptcy Rule 7004, which is made applicable by Bankruptcy Rule 9014, permits service by first class mail or publication.

23.  Bankruptcy Rule 2002(c)(1) governs the contents of the notice of a proposed sale and requires that notice include <u>inter alia</u> the terms and conditions of any private sale and the time fixed for filing objections. A general description of the property to be sold is also required. A copy of the proposed notice is annexed hereto as <u>Exhibit C</u> (the "Notice").

24.  The Notice will inform recipients of the Debtor's intention to sell the Assets free and clear of all liens, claims, encumbrances and interests, subject only to the Bankruptcy Court's consideration of higher or better bids than the offer made by the Buyer. In addition, the Notice shall provide a summary of the relevant terms of the Sale Agreement. The Notice will also inform

recipients of the Bidding Procedures and the date and time of all hearings at which the Court will consider matters relating to the Sale.

25. The Debtor propose to serve the Notice by first class mail upon the following parties: [all of the Debtor' creditors and interest holders], all entities known to the Debtor to have expressed a *bona fide* interest in acquiring all or portions of the Assets, all taxing authorities or recording offices which have a reasonably known interest in the relief requested, the Office of the United States Trustee, counsel to Wachovia, all federal, state and local regulatory authorities with jurisdiction over the Debtor, the office of the United States Attorney for the District of Connecticut, all non-debtor parties to the Leases and Contracts, all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Assets, other known parties-in-interest and any other parties entitled to receive notice in these cases.

26. The Debtor also proposes to place an abbreviated form of the Notice as a legal notice advertisement in the Hartford Courant and the Boston Globe of a size and placement deemed suitable by the Debtor, to be run on a date within five business days of the entry by the Court of the Order approving the Procedures Motion (the "Procedures Order").

27. In addition, to facilitate the sale, assumption and assignment of those Leases and Contracts to be assumed by the Debtor and assigned to the Buyer, the Debtor will serve a notice (the "Cure Amount Notice"), similar to the form attached hereto as Exhibit D upon each counterparty to

a Lease or Contract that may be assumed and assigned. The Debtor will attach to the Cure Amount Notice their calculation of the cure amounts that the Debtor believe must be paid to cure all defaults under all Leases and Contracts (the "Cure Amounts"). Unless the non-debtor party to a Lease or Contract files and serves an objection to its scheduled Cure Amount by the Objection Deadline set forth below, and in the manner set forth below, such non-debtor party shall (i) be forever barred from objecting to the Cure Amount and from asserting that any additional cure or other amounts are owed as of the date of assignment with respect to such Lease or Contract, and the Debtor and maker of the prevailing bid at the auction shall be entitled to rely solely upon the Cure Amount; and (ii) be forever barred and estopped from asserting or claiming against the Debtor or the maker of the prevailing bid at the auction that any additional Amounts are as of the date of assignment due or defaults exits under such Lease or Contract or any other claims with respect to such Lease or Contract.

No assumption or assignment shall be deemed effective unless and until the sale of certain of the Debtor's Assets closes.

28. Debtor hereby requests, in order to avoid immediate and irreparable harm to the Debtor' estate, an order shortening notice of the hearing on the Sale Motion and the Contracts Motions, to nineteen (19) days so that the hearing on such matters can be held on August 5, 2009, such Notice to be made by first-class mail on or before July 17, 2009. The reason the Debtor request

a hearing on the Sale Motion and the Contracts Motions on an expedited basis is that the Debtor needs to complete the sale of its businesses prior to August 7, 2009 when the Debtor anticipates that its will no longer have sufficient funds available to maintain its businesses as a going concern. If the Debtor is unable to sell its businesses as a going concern, the Debtor' estates and their creditors will be irreparably harmed. The Debtor reserves the right to request the Court to further modify the requested notice in open Court.

## LOCAL RULE LBR 6004-1

29.     The Debtor also requests an order from this Court dispensing with the appraisal requirement in LBR 6004-1. An appraisal is not warranted under the facts of this case insofar as the Debtor have already negotiated a sale of the Assets to the Buyer on reasonable and fair terms, subject to higher and better bids as set forth herein.

WHEREFORE, the Debtor request this Court to enter the proposed form of Procedures Order: (i) providing for bidding sales procedures for the sale of the Assets; (ii) authorizing the break up fee; (iii) approving the form and manner of notice and (iv) authorizing the Debtor to dispense with an appraisal of the Assets.

Dated at Hartford, Connecticut this 9th day of July, 2009.

        Golfers' Warehouse, Inc.

        By___/s/ Barry S. Feigenbaum_____
           Barry S. Feigenbaum
           Fed. Bar No. ct06605
           Matthew T. Wax-Krell
           Fed. Bar No. ct26905Rogin Nassau LLC
           Its Attorneys