# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ************************************ | : | PROCEEDINGS FOR |
| IN RE: | : | REORGANIZATION UNDER |
|     Golfers' Warehouse, Inc. | : | |
| | : | CHAPTER 11 |
|            DEBTOR | : | |
| | : | |
| | : | CASE NO. 09-21911 (ASD) |
| ************************************ | | RE: DOC.I.D. NO 15 and 16 |

## ORDER UNDER 11 U.S.C. §§ 105, 363 AND 365 APPROVING AND AUTHORIZING (A) THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO THE TERMS OF THE ASSET PURCHASE AGREEMENT WITH GWNE, INC.; (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (C) AND FURTHER RELIEF

Upon the Motion (the "Sale Motion") of Golfers' Warehouse, Inc. (the "Debtor") for Order

under 11 U.S.C. §§ 105, 363 and 365 Approving and Authorizing (a) the Sale of Substantially All

Assets of the Debtor (the "Sale") Free and Clear of all Liens, Claims, Interests and Encumbrances

Pursuant to the Terms of the Asset Purchase Agreement with GWNE, Inc., (b) the Assumption and

Assignment of Certain Unexpired Leases and Executory Contracts; and (c) Further Relief; and

The Debtor having entered into that certain Asset Purchase Agreement with GWNE, Inc., a Delaware corporation (the "Buyer"), as buyer, signed on July 9, 2009 (the "APA"); and

Due notice of the proposed Sale, the Sale Motion, this Order, and the hearing on the Sale Motion (the "Sale Hearing") having been given to all parties entitled to notice under the Sale Procedures Order, as evidenced by the Certificates of Service and Notice of Publication previously filed with this Court and affirmed on the record in this proceeding; and

The Debtor having determined, in consultation with its financial advisors, that the APA represented the highest and best offer for substantially all of the Debtor's assets as more particularly described in the APA (the "Purchased Assets"); and

The Debtor having filed the Sale Motion to sell the Purchased Assets to the Buyer and to consummate the APA with the Buyer; and

The Sale Hearing having been held before this Court on August 5, 2009 to approve the Sale pursuant to the APA to the Buyer, to authorize and approve the assumption and assignment to the Buyer of certain unexpired leases and executory contracts, at which time all parties in interest were afforded an opportunity to be heard; and

NOW, THEREFORE, based upon all of the pleadings previously filed by the Debtor and other interested parties in connection with the Sale, the evidence presented, proffered, attested to, or

adduced at or in connection with the Sale Hearing, and upon the entire record of the Sale Hearing (collectively, the "Record"); and after due deliberation thereon; and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED AS FOLLOWS:**

     **A.**     **Jurisdiction, Final Order, And Statutory Predicates**

     1.     This Court has jurisdiction to hear and determine this matter and to grant the relief requested in the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(b).

     2.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

     3.     Notwithstanding Bankruptcy Rule 6004(h), the Court finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

     4.     This matter is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A), (N), and (O).

     5.     The statutory predicates for the relief sought in the Sale Motion are 11 U.S.C. §§ 105, 363 and 365 and Bankruptcy Rules 2002, 6004, 6006, 9014, and 9019.

     **B.**     **Notice of the Sale Motion and the Sale Hearing**

     6.     Pursuant to the Certificates of Service of Notice of the Sale Hearing filed by the Debtor on July 17 and 24, 2009 with this Court and based upon the representations of counsel at the

Sale Hearing, timely Notice of the Sale Motion, the Sale, and the Sale Hearing (collectively, the "Sale Notice"), was transmitted to: (a) the Office of the United States Trustee and (b) to all (i) creditors (as defined in 11 U.S.C. §101(1)); (ii) equity security holders; (iii) entities known to the Debtor to assert any rights in any of the Purchased Assets; (iv) parties in interest and other entities and persons so entitled and that are known to the Debtor; (v) parties to the Assumed Leases and Assumed Contracts (as hereinafter defined); (vi) all applicable federal, state, and local tax and regulatory authorities with jurisdiction over the Debtor and/or the Purchased Assets; and (vii) all entities that have requested notice in the Debtor's Chapter 11 case.

7.      The Notice was adequate and sufficient under the circumstances of this Chapter 11 case and this proceeding and complied with the various applicable requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the procedural due process requirements of the United States Constitution. A reasonable opportunity to object or be heard with respect to the Sale Motion and the Sale was afforded to all interested persons identified in paragraph 6 above.

8.      In accordance with the Sale Motion, notice of the Sale was served upon all non-Debtor counterparties (the "Section 365 Counterparties") to all of the Debtor' unexpired leases and executory contracts, the Section 365 Counterparties each had a full and fair opportunity to object to the Debtor's assumption, and assignment to the Buyer, of those unexpired leases (the "Assumed Leases") and executory contracts (the "Assumed Contracts") listed on Schedule 1 hereto. The

- 4 -

service of the Sale Notice, including notice to the Section 365 Counterparties of the potential

assumption and assignment of the Assumed Leases and Assumed Contracts was good, sufficient,

and appropriate under the circumstances and no further notice need be given in respect of the

assumption and assignment of the Assumed Leases and Assumed Contracts contemplated hereby.

Section 365 Counterparties to the Assumed Leases and Assumed Contracts have had a reasonable

opportunity to object to the assumption and assignment of such pre-petition leases and contracts to

the Buyer. As of the date hereof, no objection to the Debtor's assumption and assignment to the

Buyer, of the Assumed Leases or the Assumed Contracts remains pending. No cure is required,

pursuant to Section 365 of the Bankruptcy Code, by the Debtor or the Buyer with respect to any of

the Assumed Leases and Assumed Contracts.

9.     As demonstrated by the testimony and other evidence at the Sale Hearing, the Debtor

have marketed the Purchased Assets and conducted the Sale process fairly and with adequate

opportunity for interested parties to submit bids.

**C.    Section 363 Sale Free and Clear of Claims, Liens, Interests, and Encumbrances**

10.    For the reasons set forth in the Record and the Sale Motion, there are good and sound business reasons for the Sale to occur in accordance with the Sale Motion, the APA and this Order. Among other things, to maximize the value of the Purchased Assets, it is essential that the Sale occur within the time constraints set forth herein.

11.    The Debtor's secured creditor has approved the entry of this Order.  At the Closing, the secured claims of Wachovia Bank, N.A. shall be released and all liens related thereto shall attach to the proceeds of Sale.

12.    The Purchased Assets are property of the Debtor's estate and title thereto is vested in the estate.

13.    The Debtor is authorized to sell the Purchased Assets, pursuant to 11 U.S.C. § 363(b), free and clear of all liens, claims, interests, and encumbrances, because, with regard to the Purchased Assets, one or more of the applicable provisions of 11 U.S.C. § 363(f)(1)-(5) have been satisfied.

14.    Based on the Record, the provisions of 11 U.S.C. § 363(f) of the Bankruptcy Code have been satisfied, and the Purchased Assets shall be sold free and clear of all liens, claims, interests, and encumbrances other than the Permitted Encumbrances and any other Assumed Liabilities (as each are defined in the APA) which are expressly assumed by the Buyer under the APA.

- 6 -

15.     Any holder of a lien, claim, interest, or encumbrance of any kind or nature related either to the Purchased Assets and who did not object to the Sale, or who objected and then withdrew any such objection, is deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2).

16.     The purchase terms for the Purchased Assets, each as set forth in the APA, including the consideration therefor, are fair and reasonable under the circumstances of this Chapter 11 case and this proceeding.

17.     The Sale Motion and the Sale should be approved as they are in the best interests of the Debtor, the Debtor's estate, and the Debtor's creditors.

18.     The Sale is not being entered into in order to escape liability for the debts of the Debtor's estate, and the estate is otherwise unable to satisfy the Debtor's debts. The Debtor has full corporate power and authority necessary to consummate the transactions contemplated by the APA and has taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby.

19.     Given all of the circumstances of the Chapter 11 case and the adequacy and fair value of the purchase price under the APA, the Sale of the Purchased Assets to the Buyer is in the best interests of the Debtor, its estate, creditors, and other parties in interest and constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

20.     The value of the Purchased Assets and the Debtor's estates would be manifestly

harmed by any delay in any sale, assumption, assignment, or other transactions contemplated in the

APA.

21.     Time is of the essence in consummation of the transactions contemplated by the APA.

22.     The APA was not entered into for the purpose of hindering, delaying, or defrauding

Debtor's creditors, and the parties are not entering into the transactions contemplated by the APA

fraudulently.

23.     Buyer's obligation to close the transaction contemplated by the APA remains subject

to satisfaction (or waiver by Buyer) of all conditions set forth in the APA.

24.     Intentionally deleted.

**D.      Good Faith Of the Buyer**

25.     The Buyer is purchasing the Purchased Assets in good faith and is a good faith

purchaser within the meaning of 11 U.S.C. § 363(m), and is therefore entitled to all of the

protections of that provision. The Buyer has proceeded in good faith in all respects in connection

with the Sale and this proceeding in that, among other things (a) the Buyer recognized that the

Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) all

payments to be made by the Buyer, and other agreements or arrangements entered into by the Buyer

in connection with the transactions set forth in the APA, have been disclosed; (c) the Buyer has not

violated 11 U.S.C. § 363(n) by any action or inaction; (d) the Buyer is a third-party purchaser unrelated to the Debtor and is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code; and (e) the Debtor and Buyer negotiated and executed the APA and all other agreements or instruments related thereto was without collusion, from arm's-length bargaining positions, and in good faith.

26.     Neither the Buyer nor the Debtor have engaged in any conduct that would cause or permit the Sale, the APA or the transactions contemplated therein, to be avoided (or the validity of any sale or transfer affected) pursuant to Section 363(n), or any other provisions of the Bankruptcy Code.

**E.      The Auction and Competing Offers**

27.     The Debtor has been actively marketing their assets for over two (2) months to potential strategic and financial buyers. The APA represents the Debtor's best chance to sell the Purchased Assets as a going concern.

28.     The APA is both the highest and best offer for the Purchased Assets and the only offer for substantially all of the Purchased Assets.

29.     Failure to obtain approval of the APA would likely result in the secured creditor foreclosing on its collateral, thereby disrupting the Debtor's operations with serious and potentially disastrous effects for the Debtor's employees, secured creditor and priority creditors.

30.     The sale under the APA will provide funds for distribution to the Debtor's creditors and will minimize the damage to them.

31.     The consummation of the sale will allow the Debtor's business to continue to operate without interruption. The proposed sale is the best alternative available to the Debtor, its estates and the various parties in interest.

32.     The Buyer has submitted the highest and best possible offer for the Purchased Assets because (a) the Buyer may be the only identified potential purchaser that can buy the Purchased Assets on a "going concern" basis, (b) a "going concern" sale pursuant to the APA is necessarily a higher and better offer than any liquidation sale; (c) the Debtor, after consulting with its counsel and financial advisors have determined that no other party has made an offer for the Purchased Assets for greater economic value to the Debtor than the offer of the Buyer currently under consideration; and (d) the consideration to be paid to the Debtor, coupled with the Buyer' assumption of the Assumed Liabilities in accordance with the APA, constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

33.     The Debtor adequately marketed the Purchased Assets and conducted the Sale process and the auction in a non-collusive, fair, and good faith manner.

34.     The terms and conditions of the APA are fair and reasonable. The purchase price of the Purchased Assets under the APA (i) represents the highest and best offer for the Purchased Assets, (ii) is fair and reasonable, and (iii) will provide a greater recovery for creditors than would be provided by any other practical available alternative.

35.     The closing of the transactions contemplated by the APA remain subject to the satisfaction (or waiver by the Buyer) of the closing conditions as set forth in the APA.

**F.     No Successor Liability**

36.     The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby if the Sale of the Purchased Assets were not free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances and any liabilities expressly assumed under the APA) or if the Buyer would, or in the future could, be liable for any such liens, claims, interests, or encumbrances.

37.     Protection from potential successor liability claims was a material consideration in the negotiated bargain set forth in the APA. Without such protection and assurances, the Buyer would have insisted upon a lower purchase price.

38.     Based on the Record, (i) the Buyer does not constitute a successor to the Debtor or its estate; (ii) the Sale does not constitute a consolidation or merger, or de facto merger or consolidation, of the Buyer and the Debtor and/or its estate; (iii) the Buyer and its businesses are not

- 11 -

merely a continuation or substantial continuation of the Debtor or its businesses in that there is not

substantial continuity between the Buyer and the Debtor and/or its estate and there is no continuity

of enterprise between the Buyer and the Debtor and/or its estate; and (iv) the Buyer does not have

any common incorporators, directors, or shareholders with the Debtor.

39.     Based on the foregoing, the Buyer shall not have any successor or other liability for

any liens, claims, interests, or encumbrances of any kind or nature against or related to the Debtor,

the Debtor' estate, or the Purchased Assets whatsoever (other than the Permitted Encumbrances and

Assumed Liabilities under the APA).

### G.     **Assumption of Unexpired Leases and Executory Contracts**

40.     The Buyer would not have entered into the APA and would not consummate the

transactions contemplated thereby if it could not take the assignment of the Assumed Leases and

Assumed Contracts of the Debtor.  The assumption by the Debtor and the assignment to the Buyer of

the Assumed Leases and Assumed Contracts, therefore, is essential to the Sale and are essential

assets that the Buyer is acquiring under the APA.

41.     To the extent any Purchased Assets constitute an executory contract or unexpired

lease, (i) the Buyer has demonstrated to the satisfaction of the Court and all Section 365

Counterparties, its financial wherewithal and expertise relative to the management and operation of

the Purchased Assets and (ii) the Buyer's promise to perform under the terms of the applicable

- 12 -

Purchased Assets constitutes adequate assurance of future performance pursuant to Sections 365(b)(3) and 365(f)(2) of the Bankruptcy Code.

42.    It is necessary, appropriate, and in the best interests of Debtor and its estate (a) for assumption and assignment of the Assumed Leases and Assumed Contracts to Buyer to be free and clear of any claims of defaults arising prior to the Petition Date and/or arising on or after the Petition Date, but on or before the Closing Date, and (b) for the Debtor to be responsible for curing those defaults necessary to assume and assign each Assumed Lease and Assumed Contract. Any defaults under each Assumed Lease and Assumed Contract that arise after the Closing Date and for thereafter paying obligations as they come due after such assignment shall be paid by the Buyer.

43.    It is in the best interests of the Debtor that, in accordance with the provisions of Section 363 of the Bankruptcy Code, the Assumed Leases and Assumed Contracts be transferred and assigned free and clear of all Interests (as hereinafter defined).

44.    Any extension or renewal option in an Assumed Lease or Assumed Contract that purports to be "personal" only to the Debtor or to be exercisable only by the Debtor is an unenforceable restriction on assignment and, in fact, may be freely exercised by Buyer to its full extent.

45.    It is in the best interests of the Debtor's estate, and necessary and appropriate, that the assumption and assignment of the Assumed Leases and Assumed Contracts shall be deemed

- 13 -

effective and binding as of the Closing Date and shall require no further order of the Bankruptcy

Court to take place.

**H.     Retention Of Jurisdiction**

46.     It is necessary and appropriate for this Court to retain jurisdiction to interpret and

enforce the terms and provisions of this Order and the APA and to adjudicate, if necessary, any and

all disputes concerning the assumption and assignment of the Assumed Leases and Assumed

Contracts, any right, title, or property interest, including ownership claims, relating to the Purchased

Assets and the proceeds thereof, as well as the extent, validity, and priority of all liens relating

thereto.

**I.     Miscellaneous**

47.     To the extent appropriate, findings of fact in this Order shall be construed as

conclusions of law and conclusions of law in this Order shall be construed as findings of fact.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED, AND
DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

A. The relief requested in the Sale Motion is granted and approved in all respects, and
any objections thereto that have not been otherwise withdrawn, waived, or settled are overruled. The
APA and the Sale are hereby approved in all respects.

B. All objections to the Sale Motion or the relief requested therein that have not been
withdrawn, waived, or settled, and all reservations of rights included therein, are overruled. Those
parties who did not object, or who withdrew their objections, to the Sale Motion are deemed to have
consented pursuant to Section 363(f)(2) of the Bankruptcy Code.

C. The Debtor is authorized and directed to take any and all actions necessary or
appropriate to (i) consummate the Sale of the Purchased Assets to the Buyer (including, without
limitation, to convey to the Buyer any and all of the assets intended to be conveyed) at the Closing in
accordance with the Sale Motion, the APA, and this Order; (ii) perform, consummate, implement,
and close fully the APA together with all additional instruments and documents that may be
reasonably necessary or desirable to implement the APA; and (iii) perform the obligations
contemplated by the APA including all actions reasonably requested by the Buyer in regard thereto.

D. The Debtor is authorized pursuant to Section 365(a) of the Bankruptcy Code to
assume the Assumed Leases and Assumed Contracts and to assign the Assumed Leases and

Assumed Contracts to the Buyer.  Each of the Assumed Contracts set forth on Schedule 1 to this

Order constitute executory contracts or unexpired leases within the meaning of section 365 of the

Bankruptcy Code and will be deemed assumed and assigned by the Debtor effective upon the sale of

the Purchased Assets.  Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Debtor

and the Buyer (as governed by the APA) shall pay to the Section 365 Counterparties the cure

amounts, if any, set forth on Schedule 1 hereto, at closing of the sale of the Purchased Assets or such

other lesser amounts as the Section 365 Counterparties shall have agreed to accept in lieu of such

cure amounts.

      E.      The Debtor and the Buyer have demonstrated adequate assurance of future

performance by the Buyer under the Assumed Leases and Assumed Contracts in accordance with

Sections 365(b)(3)(d) and 365(f)(2)(b) of the Bankruptcy Code.

      F.      Except for allowed claims for cure amounts as set forth on Schedule 1, each Section

365 Counterparty shall, as of the sale closing date, be forever barred and enjoined from asserting

against the Debtor, its bankruptcy estate, the Buyer or any of the Purchased Assets: (a) any default,

monetary or non-monetary, existing as of the sale closing date, or (b) any objection to the

assumption and assignment of such Section 365 Counterparty's Assumed Lease or Assumed

Contract, whether or not such Section 365 Counterparty filed a proof of claim.

      G.      Upon the Closing, the Purchased Assets to be transferred, sold, and delivered to the

Buyer shall be free and clear of any and all encumbrances, obligations, liabilities, interests, pledges, contractual commitments, claims (including, without limitation, any and all "claims" as defined in §101(5) of the Bankruptcy Code), rights of setoff/off-set, rights of recoupment, security interests, mortgages, liens, charges, adverse claims, claims of possession, right of ways, licenses, easements, or restrictions of any kind or nature whatsoever whether based in law or equity, including, without limitation any claim or interest based on or related to any employee benefit obligations, patent or trademark laws, the Employee Retirement Income Security Act, the Comprehensive Omnibus Budget Reconciliation Act, CERCLA, other environmental laws, or product liability laws or any claim or interest based on any theory of successor liability, de facto merger, substantial continuity, or similar theory, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the petition date, whether imposed by agreement, understanding, law, equity or otherwise (collectively referred to as "Interests," such term to be deemed to exclude any and all Permitted Encumbrances and Assumed Liabilities expressly permitted or assumed under the APA), with all such Interests to attach to the net proceeds of the Sale in the order of their priority.

- 17 -

H.     The Buyer is not a successor to the Debtor or its estate by reason of any theory of law

or equity, and the Buyer shall not assume or in any way be responsible or liable for any liability or

obligation of the Debtor or its estate, except as may otherwise expressly be provided in the APA.

Except with respect to the Assumed Liabilities, pursuant to sections 105 and 363 of the Bankruptcy

Code, all persons and entities, including, but not limited to, all parties holding any Interest against

the Debtor, its estate or its assets, the Debtor's employees, former employees and shareholders,

administrative agencies, governmental departments, secretaries of state, federal, state and local

officials, including such officials maintaining any authority relating to environmental, labor and

health and safety laws, and their respective successors or assigns, are hereby permanently and

forever barred, restrained and enjoined from commencing or continuing in any manner any action or

other proceeding of any kind or the employment of any process or any act to collect, offset or

recover any Interest against the Buyer, or that seeks to impose liability upon the Buyer or any

affiliate, successor or assign thereof, or against the Purchased Assets or the Assumed Contracts and

Assumed Leases, under the laws of the United States, any state, territory or possession thereof or the

District of Columbia based, in whole or in part, directly or indirectly, on any theory of law,

including, without limitation, any theory of successor or transferee liability or any liability for pre-

or postpetition Interests by reason of the transfer of the Purchased Assets to the Buyer, including,

without limitation, pre- and postpetition Interests of any federal, state or local governmental entities,

of any current or former employee for claims arising out of employment and termination of employment, including, without limitation, claims for wages, bonuses, commissions, accrued vacation, severance, continuation of coverage under COBRA, or pension, welfare, fringe benefits or any other benefits of any kind including, without limitation, obligations in respect of retiree medical coverage or benefits.

I.      Effective on the date of entry of this Order, except as may otherwise expressly be provided in the APA, all Persons and Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code), including, but not limited to, the Debtor, the Debtor's estate, creditors, employees, former employees, equity security holders, persons holding any Interest against or Interest in the Debtor's estate, the Purchased Assets (including any Interests arising under any applicable revenue, pension, patent, trademark, ERISA, tax, labor, environmental, or product liability law), administrative agencies, governmental departments, secretaries of state, federal, state and local authorities, any entity maintaining any authority relating to any environmental laws, and their respective successors or assigns, shall be permanently and forever barred, restrained, and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Buyer, or its successors, assigns, officers, directors, affiliates, or shareholders, as the alleged successors or otherwise, with respect to the operation of the Debtor's business prior to the Closing Date.

J.      The sale of the Purchased Assets to the Buyer under the APA constitutes a transfer

for reasonably equivalent value and fair consideration under the Bankruptcy Code and laws of all

applicable jurisdictions, including, but not limited to the laws of the States of Connecticut, Rhode

Island, Massachusetts and Delaware. The sale approved by this Order is not subject to avoidance

pursuant to Section 363(n) of the Bankruptcy Code.

K.      Each and every term and provision of the APA, together with the terms and

provisions of this Order, shall be binding in all respects upon all entities, including the Debtor, the

Debtor's estate, creditors, employees, former employees, equity security holders, shareholders,

persons holding any Interest against or Interest in the Debtor's estate or any of the Purchased Assets

(including any Interests arising under any applicable revenue, pension, patent, trademark, ERISA,

tax, labor, environmental, or product liability law), administrative agencies, governmental

departments, secretaries of state, federal, state and local authorities, any entity maintaining any

authority relating to any environmental laws, and their respective successors or assigns, including,

but not limited to all Section 365 Counterparties to the Assumed Leases and Assumed Contracts.

L.      Except as otherwise provided in the APA, the Buyer shall not be obligated to (i)

continue or maintain in effect, or assume any liability in respect of any employee pension, welfare,

fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtor is

a party or have any responsibility therefor, including, without limitation, medical, welfare and

pension benefits payable after retirement or other termination of employment, or (ii) assume any

responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect

of the funding, investment or administration of any employee pension plan or the termination of any

such plan.

     M.    The transactions contemplated by the APA and this Order are undertaken by the

Buyer in good faith, as that term is used in 11 U.S.C. § 363(m) and accordingly, the reversal or

modification on appeal of the authorization provided herein to consummate the Sale shall not affect

the validity of the Sale unless such authorization is duly stayed pending such appeal prior to the

Closing.  The Buyer is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

     N.    Upon the closing of the sale of the Purchased Assets to the Buyer, any and all claims

of the Debtor, Debtor's estate, and any official committee appointed in the Debtor's bankruptcy case

(including, but not limited to, any and all manner of rights, claims, judgments, demands, actions,

causes of action, controversies, losses, obligations, contracts, covenants, agreements, promises,

damages, costs, expenses and liabilities of every kind and nature whatsoever at law or in equity,

suspected or claimed, known or unknown and whether or not discoverable, all damages, suits of

whatever kind or nature, whether asserted individually, collectively, or in a representative capacity,

directly, derivatively, vicariously, indirectly, by operation of law or otherwise, whether suspected or

claimed, known or unknown), if any, against any of the Purchased Assets, the Buyer, any of the

Buyer's parents, affiliates, and subsidiaries and any and all directors, general and limited partners, members, shareholders, officers, executives, employees, principals, representatives, trustees, agents, attorneys, advisors, executors, heirs, successors and assigns, past and present of any and all of the foregoing (each, a "Buyer Party" and, collectively, the "Buyer Parties"), relating to any and all claims other than claims relating to or arising under the APA, including, but not limited to, any and all claims relating to any past conduct or activity of any Buyer Party are hereby released and discharged and such release and discharge shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with this case or any other or further case involving the Debtor, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

O.     This Order: (a) is and shall be effective as a determination that, upon Closing, all Interests existing as to the Purchased Assets have been and hereby are adjudged and declared to be unconditionally released, discharged, and terminated, and (b) shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to the

Buyer. All Interests of record as of the date of this Order shall be forthwith removed and stricken as against the Purchased Assets. All such Entities described above in this Paragraph are authorized and specifically directed to strike all such recorded Interests against the Purchased Assets from their records, official and otherwise.

P. The Debtor is authorized to execute such documents and take all other actions as may be necessary to release any Interests of any kind against the Purchased Assets as such Interests may have been recorded or may otherwise exist. If any person or entity that has filed statements or other documents or agreements evidencing Interests on or in the Purchased Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests that the person or entity has or may assert with respect to the Purchased Assets, the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets as the case may be.

Q. Any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any former vendor, supplier, landlord or employee of the Debtor (a) shall be transferred to the Buyer free and clear of the Interests and (b) shall be delivered at the Closing to the Buyer unless, pursuant to the APA, such person, entity, vendor, supplier, landlord or

- 23 -

employee may retain temporary possession or control of any of such assets, in which case the

possession of such item shall be delivered to the Buyer at such time as is designated by the Buyer.

R. Nothing contained in any order of any type or kind entered in this Chapter 11 case or

any related proceeding subsequent to the entry of this Order shall conflict with, alter, or deviate from

the provisions of the APA or the terms of this Order. Any plan of reorganization related to the

Debtor shall incorporate the provisions of this Order in all respects.

S. No consumer privacy ombudsman is needed to be appointed with regard to the Sale,

as the Sale is consistent with the Debtor' consumer privacy policy that was in effect as of the

Petition Date.

T. This Court retains jurisdiction, even after the closing of the Chapter 11 case, to:

    (i) Interpret, implement, and enforce the terms and provisions of this Order and the terms of the APA, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith;

    (ii) Protect the Buyer or any of the Purchased Assets from and against any of the Interests;

    (iii) Compel delivery of all Purchased Assets to the Buyer;

    (iv) Resolve any disputes arising under or related to the APA, the Sale, or the Buyer's peaceful use and enjoyment of the Purchased Assets;

    (v) Adjudicate all issues concerning (alleged) pre-Closing Interests and any other (alleged) Interest(s) in and to the Purchased Assets, including the extent, validity, enforceability, priority, and nature of all such (alleged) Interests;

  (vi) Adjudicate any and all issues and/or disputes relating to the Debtor' right, title, or interest in the Purchased Assets and the proceeds thereof, the Sale Motion, and/or the APA; and

  (vii) Adjudicate any and all remaining issues concerning the Debtor's obligations, rights, and authority to assume and assign the Assumed Leases and Assumed Contracts and the Buyer's rights and obligations with respect to such assignment.

 U. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale.

 V. No employee or former employee of the Debtor shall be deemed to be an employee of the Buyer absent an agreement between the Buyer and the employee or former employee establishing new terms of employment.

 W. Neither the Buyer nor the Debtor shall be liable for any broker's fee, finder's fee, or similar fee relating in any manner to the Sale.

 X. The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the APA and each and every provision, term, and condition thereof be, and therefore is, authorized and approved in its entirety; provided however that the APA may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, without further order of this Court, provided that any such modification, amendment, or supplementation does not have a material adverse effect on the Debtor's estate.

Y.    The terms of this Order, the APA and all instruments, documents and agreements

approved herein or signed and delivered on behalf of the Debtor in furtherance of this Order shall be

binding on and inure to the benefit of the Debtor, the Buyer, and the Debtor's creditors and all other

parties-in-interest, and any affiliates, successors or assigns thereof, including any trustee or examiner

appointed in these cases or any subsequent or converted cases of the Debtor under Chapter 7 or

Chapter 11 of the Bankruptcy Code.

Z.    This Order and the Judgment Order entered in connection herewith shall be effective

*as* immediately upon entry, the 10-day stay of Fed. R. Bankr. P. 6004(h) is NOT applicable, and the No ~~and Federal Rules of Bankruptcy Procedure 6004(g) is waived, and no~~

automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, applies

with respect to this Order.

*as* ~~A.A.    Pursuant to Rule 58 of the Federal Rules of Civil Procedure, as made applicable herein by Rule 9021 of the Federal Rules of Bankruptcy Procedure, a separate document in the form of a Judgment Order will be entered approving the Sale Motion.~~

BB.    Notwithstanding anything in the APA to the contrary, the Debtor shall be permitted by

the Buyer to utilize the Buyer's Hartford office (the "Office") as follows: During the first fifteen (15)

days following the consummation of the Sale, up to four (4) employees of the Debtor may utilize the

Office to conduct business for the Debtor and from the sixteenth day until September 30, 2009 up to

two (2) employees of the Debtor may utilize the Office to conduct business of the Debtor.  The

Debtor's employees will have access to the Office during normal business hours. The Debtor will not pay any rent or related occupancy costs for the use set forth herein. The Debtor shall be solely liable for the payment of all wages and associated benefits of its employees occupying the Office pursuant to this paragraph.

CC. Subject to receipt by Wachovia Bank, National Association, as pre-petition and post-petition lender ("Lender") of the net proceeds of this sale in an amount not less than $1,900,000 ("Receipt Date") and Lender's right of application of such proceeds in accordance with the Final Financing Order [Docket No. 96] ("Financing Order") and the Post-Petition Loan And Security Agreement dated July 14, 2009, as amended ("Loan Agreement"), (a) the "Commitment" as defined in Loan Agreement and the "Unwind Reserve Commitment" (as defined in the Financing Order) shall be deemed terminated as of the close of business on the Receipt Date and Lender shall have no further obligation or commitment to make any "Credit Extensions" (as defined in the Financing Order) to Debtor under the Financing Order, Loan Agreement or any related documents; and (b) subject to Lender's rights of application of the funds, Debtor shall be authorized to use Cash Collateral from the Receipt Date through August 31, 2009 (or such later date as is agreeable to Lender; the "Use Period") to pay Debtor's expenses which are due to be paid during the Use Period and are permitted to be paid under the Bankruptcy Code or existing order of the Court. On September 1, 2009, the Lender shall send a written notice to Debtor's Counsel, counsel to the

Official Committee of Unsecured Creditors and the Office of the United States Trustee, as to

whether Full Payment (as defined in the Loan Agreement) has or has not occurred and, if not, the

reason or reasons why Full Payment has not occurred, which notice shall be sent by fax or email.

**IT IS SO ORDERED.**

**ALBERT S. DABROWSKI**
CHIEF UNITED STATES BANKRUPTCY JUDGE

8/5/2009